UNITED STATES of America, Plaintiff,

v.

James Alex BOLLIN, Defendant.

Crim. A. No. 3–83–00157.

United States District Court,
M.D. Tennessee,
Nashville Division.

Aug. 3, 1983.

John P. Williams, Asst. U.S. Atty., Nashville, Tenn., for plaintiff.

Donald E. Dawson, Asst. Federal Public Defender, Nashville, Tenn., for defendant.

## MEMORANDUM OPINION, FINDINGS, CONCLUSIONS AND ORDER

NEESE, District Judge.

The defendant Mr. Bollin made at trial an untimely, Rule 12(c), F.R.Crim.P., oral motion for a dismissal of the indictment herein on the ground of the presence of a defect in the institution of this prosecution, Rule 12(b)(1), F.R.Crim.P. That defect was alleged to be the delay from April 6, 1981[1] until May 18, 1983[2] in its institution, a delay noticed judicially to have spanned more than two years.

The Constitution, Fifth Amendment, " * * * Due Process Clause[,][3] has a limited role to play in protecting against oppressive delay * * * " in bringing overly stale criminal charges. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048[3], 52 L.Ed.2d 752 (1977). The issue to be determined is

> "only whether the action complained of * * * violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' * * * and which define 'the community's sense of fair play and decency' * * *."

*Ib.*, 431 U.S. at 790, 97 S.Ct. at 2049[6]. The determination of this issue is left, in the first instance, with the trial courts as they perform " * * * the task of applying the settled principles of due process * * *

---

**1.** The offenses charged in the indictment herein were alleged to have occurred "[o]n or about April 6, 1981."

**2.** The indictment herein was returned by a grand jury on May 18, 1983.

**3.** "No person shall * * * be deprived * * * of * * * liberty * * * without due process of law * * *." Fifth Amendment, *supra; see Galvan v. Press*, 347 U.S. 522, 530, 74 S.Ct. 737, 742[8], 98 L.Ed. 911 (1954), *reh. den.*, 348 U.S. 852, 75 S.Ct. 17, 99 L.Ed. 671 (1954) ("[T]he sense of fair play * * * is the essence of due process * * *.")

to the particular circumstances of [the] individual case[ ] * * *." *Ib.,* 431 U.S. at 797, 97 S.Ct. at 2052[11].

The particular circumstances of this individual case are that Mr. Bollin endorsed his own name to and cashed the Treasury check of Mr. Bryant Brown of April 3, 1981 three days afterward. He claimed when interrogated subsequently he did this only after the payee Mr. Brown had endorsed his own name thereon in printed-form, following which Mr. Bollin cashed the check for Mr. Brown and gave Mr. Brown the proceeds thereof; it was the theory of Mr. Bollin that relatives of Mr. Brown had been filching and cashing his checks, and that Mr. Brown desired to have Mr. Bollin cash this particular check for him to avert yet another such theft.

Four days after April 6, 1981, Mr. Brown became a client as an "exploited adult" of a social-worker because of reports that his government-checks had been missing. He was hospitalized in late 1981 or early 1982 and became resident of a nursing-home on January 28, 1982, where he continued to be resident on July 12, 1983 (during Mr. Bollin's trial herein) and by the time of trial herein was incapacitated mentally because of a chronic brain-syndrome complicated by arteriosclerosis.

A grand jury charged that Mr. Bollin forged Mr. Brown's endorsement on the subject-check and uttered and published it to a bank as genuine. Mr. Brown had made a claim for the proceeds of such check about October 6, 1981. Triggered by that claim, the investigation herein was commenced February 17, 1982 by Mr. William Moulton, an agent of the Secret Service; he interviewed Mr. Bollin who told him on April 6, 1982 that Mr. Brown had endorsed the subject-check by printing his (Mr. Brown's) name on it and that Mr. Bollin thereupon had cashed it for Mr. Brown.

Mr. Moulton, after receiving this exculpatory statement by Mr. Bollin, sought to interview Mr. Brown. He was advised by personnel of the nursing-home on April 19, 1982 of Mr. Brown's incompetence and inability to respond to official inquiries. Mr. Moulton interviewed Mr. Bollin a second time on June 10, 1982, and his investigative report reached the prosecuting attorney herein on June 21, 1982.

Such prosecuting officer was not then satisfied he would be able to establish the guilt of the suspect, Mr. Bollin, beyond a reasonable doubt and called on Mr. Moulton to investigate further in some 10 areas of inquiry. The final results of such supplemental investigation reached the prosecuting attorney on April 8, 1983, and he sought and obtained the indictment of Mr. Bollin herein, *supra.* Hearsay statements of Mr. Brown were admitted at trial as exceptions permitted by Rule 804(b)(5), F.R.Evid., after the requisite findings by the Court, it having been agreed by the parties that he was unavailable as a witness because of his mental-incompetence.

■ Mr. Bollin asserts the prosecutorial delay above violated the aforementioned fundamental conceptions of justice because he was prejudiced thereby; he claims the plaintiff had become aware on October 20, 1981, at least, of the theft of Mr. Brown's check, that the investigation thereof started February 17, 1982, that it was "possible" Mr. Brown (if only asked and prompted) continued to have capacity to give an exemplar of his printing, and that the intervening delay and recklessness of such investigation impaired his ability to mount an effective defense. *United States v. Lovasco, supra,* 431 U.S. at 795 n. 17, 97 S.Ct. at 2051 n. 17. Such a mere showing of prejudice does not suffice to demonstrate a deprivation of Mr. Bollin's right to due process of law. *Ib.,* 431 U.S. at 790, 97 S.Ct. at 2048–2049 ("[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim, and * * * the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.")

■ The Court hereby FINDS that Mr. Moulton was not reckless in his investiga-

tion; he was advised properly, after receipt of Mr. Bollin's exculpatory statement, that Mr. Brown lacked the capacity to answer his questions which might, or might not, have exculpated Mr. Bollin. More significantly, at trial Mr. Paul Brown, the son of Mr. Bryant Brown, testified that his father had never been able to either write or print except to the extent of printing the letter, X, as his mark.[4]

The Court hereby FINDS also that there was justifiable reason for the prosecutorial delay herein; it was occasioned by the prosecuting attorney's deferral of the seeking of an indictment against Mr. Bollin until he had become better satisfied of an ability to establish the defendant's guilt beyond a reasonable doubt.

It would have been unprofessional conduct for the prosecuting attorney to have recommended the return of an indictment on less than probable cause; " * * * prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied that they will be able to establish the suspect's guilt beyond a reasonable doubt. * * * " *Ib.*, 431 U.S. at 791, 97 S.Ct. at 2049[7]. " * * * [T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time. * * " *Ib.*, 431 U.S. at 796, 97 S.Ct. at 2051–2052[9].

Mr. Bollin claims also, albeit less urgently, that the prosecuting attorney delayed his prosecution " * * * 'to gain tactical advantage over the accused.' * * * " *Ib.*, 431 U.S. at 795, 97 S.Ct. at 2051. He claims this emanated from the facts that the prosecuting attorney knew of Mr.

Brown's progressively worsening condition and sought to assure that Mr. Bollin would not serve concurrently his current state-sentence and any sentence herein " * * * by waiting to indict until one month prior to his release from state custody."

There is insufficient evidence to support that accusation: So far as this record seems to reflect, the prosecuting attorney did not become aware of Mr. Brown's mental-condition until the initial investigative report reached him on June 21, 1982, and he made affidavit that he was not aware until June 17, 1983 when Mr. Bollin was to be released by the state of Tennessee. This Court hereby FINDS the delay herein was not inspired by any prosecutorial idea of gaining a tactical advantage over Mr. Bollin.

The Court hereby CONCLUDES that the actions of the prosecution, of which Mr. Bollin complains, did not violate those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define this community's sense of fair play and decency, and, hence, the motion of the defendant for a dismissal of this action hereby is

OVERRULED.

---

**4.** Even if Mr. Brown's exemplar had been thus obtained, its comparison with the printing on the subject-check might have been subjected to serious dispute because of his comparative conditions in the Spring of 1981 and the Winter of 1981–1982. Mr. Brown's hospitalization resulted apparently from his inability to protect himself from being bitten by rats, and his overall capacity appears to have lessened measurably thereafter. Unless such exemplar(s) had been made in his natural manner (as it had been about April 6, 1981), "so as to bear the impress of the general character" of his printing "as the involuntary and unconscious result of constitution, habit, or other permanent cause, and therefore of itself permanent," it might not have furnished satisfactory indicia for viable comparison. *Cf. Hickory v. United States,* 151 U.S. 303, 307–08, 14 S.Ct. 334, 335–336, 38 L.Ed. 170 (1894).